**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Miller, | No. CV-17-00518-TUC-BPV |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Cynthia Miller filed the instant action seeking review of the final decision of the Commissioner of Social Security. (Doc. 1.) The Magistrate Judge has jurisdiction over this case pursuant to the parties' consent under 28 U.S.C. § 636(c). (Doc. 16.) The matter is now fully briefed before this Court. (Docs. 17-19.) For the following reasons, the Court reverses the Commissioner's decision and remands for consideration in accordance with this Order.

## I. PROCEDURAL HISTORY

On May 21, 2013, Plaintiff filed an application for disability and disability insurance benefits (Administrative Record ("AR") 234-40), and on May 21, 2013 she filed a Title XVI Application for Supplemental Security Income (AR 241-49). Plaintiff alleged disability as of January 1, 2012. (AR 272.) Plaintiff claimed disability due to Bipolar Disorder, depression, anxiety, auditory hallucinations, degenerative disc disease, COPD, gout, obesity, carpal tunnel syndrome, and hernias. (AR 277.) Plaintiff's application was initially denied on September 25, 2013 (AR 68-84, 154-57), and upon

reconsideration on March 26, 2014. (AR 104-124). On September 2, 2015, Plaintiff appeared before an Administrative Law Judge ("ALJ"). (AR 4.) The ALJ issued an unfavorable decision on November 13, 2015. (AR 4-17.)[1] Following Plaintiff's Request for Review (AR 230-33), the Appeals Counsel denied Plaintiff's request on August 17, 2017 (AR 24), making the ALJ's decision the Commissioner's final decision for the purposes of review.

Plaintiff filed the instant action on October 16, 2017, arguing that: (1) the ALJ failed to give clear and convincing reasons for discrediting Plaintiff; (2) the ALJ did not properly account for the limiting effects of Bipolar Disorder; (3) the ALJ gave inappropriate weight to the opinions of examining physicians Dr. Brenda Sparrold and Dr. Machelle Martinez; and (4) the residual functioning capacity was not supported by substantial evidence. (Doc. 17 at 2.) Because the Court finds that the ALJ erred on the first two grounds, and this error was not harmless, the Court does not address Plaintiff's other arguments.

## II. PLAINTIFF'S BACKGROUND, STATEMENTS AND VOCATIONAL EXPERT'S FINDINGS

### a. Plaintiff's Testimony

Plaintiff was thirty-three years old on the date of the alleged onset of disability. (AR 278.) She completed high school and some college classes. (AR 278.) Plaintiff's past work included working at a call center and as a hemodialysis technician. (AR 15.) In the Administrative Hearing, Plaintiff claimed she suffered from daily anxiety and depression. (AR 49-50.) The anxiety caused physical impairments including sweating, dizziness, asthma, and loss of vision. (AR 50.) Plaintiff controlled her anxiety attacks with medication, but the medication took approximately 20-30 minutes before offering any relief. (AR 50.)

Plaintiff also testified that she experienced audio hallucinations a few times a week and visual hallucinations a few times a month. (AR 50.) Plaintiff described her

---

[1] Plaintiff previously filed for benefits and was denied on June 26, 2012 – within one year of the filing of the instant claim. The ALJ's decision constituted a final denial on both the prior and instant claims. (AR 4.)

hallucinations, claiming she heard children laughing and a man telling her "I've already failed at life, . . . nobody loves me . . . I don't have anything together, I'm not well. . . I can't do anything right and I just may as well give up because there's just nothing ahead for me." (AR 51.)

Plaintiff claimed the hallucinations interfered with her ability work in previous jobs, causing her to be fired after a short time. (AR 51.) She indicated several short-term jobs for which she was unable to maintain prolonged employment. (*See e.g.*, AR 42 (fired from Life Sonora Homes near Christmas 2012); AR 41 (in 2012, worked at Go Wireless "for a very short time"); AR 44-45 (in 2011, fired from A'Garo Administrative Service after six months); AR 45 (in 2010, fired from Corey G. Hicks & Associates after short term); AR 45 (in 2009, fired from Afni after 9-10 months); AR 46-47 (in 2003, worked as a hemodialysis technician for approximately six months); AR 1184 (record shows "approximately 8 terminations for failure to attend work").) For example, Plaintiff claimed that in her customer service job at Afni in 2009, her anxiety was so severe that her supervisor needed to stay with her in her car before work, calm her down, and coax her to come inside. (AR 46.) Once this supervisor left, Plaintiff was no longer capable of showing up for work and lost her job. (AR 46.)

Plaintiff explained that she supported herself though food stamps and occasional blood donations. (AR 43.) In addition, her housing and utilities were provided by COPE Community Services. (AR 43.) When asked about other financial support, Plaintiff described a three to four-week trip to Canada completely paid for by a male friend. (AR 43-44.) She claimed she got engaged to this man while there, but since she did not really know him, she had since called the engagement off. (AR 44.)

Plaintiff testified that even if she had simple, assembly line-type employment, she could not do it because of her ongoing pain and mental impairments. (AR 51-54.) She claimed the stress of even a simple job would cause her to constantly feel like she would be fired, which in turn would aggravate her anxiety, and eventually lead to her actually being fired. (AR 51-54.)

///

### b. *Vocational Expert Testimony*

The ALJ asked the Vocational Expert ("VE") whether a hypothetical person could participate in Plaintiff's prior work if this person could work 6 hours a day, carry up to 20 pounds, climb, and had "no manipulative, visual, or communicative limitations," but would need to avoid "fumes, odors, dusts, gases, poor ventilation, and . . . hazardous machinery or unprotected heights." (AR 61.) The ALJ further indicated that such a person would be capable of understanding simple instructions and procedures, and could perform sustained, simple work. *Id.* However, this person may "perform best in settings with limited social interactions and that is with not only the general public, but also with supervisors and with coworkers or peers." (AR 61-62.)

The VE responded that such person could not perform Plaintiff's prior work, but could work as a courier messenger or janitor. (AR 62-63.)

Plaintiff's attorney then asked the VE if such person would be employable if the person also had daily panic attacks for 20 minutes at a time, needed assistance to coax her into the workplace, and was off task approximately 15 percent of the day. (AR 63-64.) The VE responded that such a person would not be able participate in sustained work. (AR 64.)

## III. SUMMARY OF ALJ'S FINDINGS

Whether a claimant is disabled is determined pursuant to a five-step sequential process. *See* 20 C.F.R. §§ 404.1520, 416.920. To establish disability, the claimant must show: (1) she has not performed substantial gainful activity since the alleged disability onset date ("step one"); (2) she has a severe impairment(s) ("step two"); and (3) her impairment(s) meets or equals the listed impairment(s) ("step three"). *Id.* "If the claimant satisfies these three steps, then the claimant is disabled and entitled to benefits. If the claimant has a severe impairment that does not meet or equal the severity of one of the ailments listed[,] . . . the ALJ then proceeds to step four, which requires the ALJ to determine the claimant's residual functioning capacity (RFC)." *Dominguez v. Colvin*, 808 F.3d 403, 405 (9th Cir. 2015). Then, "[a]fter developing the RFC, the ALJ must determine whether the claimant can perform past relevant work." *Id.* Then, at stage five,

"the government has the burden of showing that the claimant could perform other work existing in significant numbers in the national economy given the claimant's RFC, age, education, and work experience." *Id.*; 20 C.F.R. §§ 404.1520, 416.920.

In this case, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2012. (AR 6.)

At step two, the ALJ determined that Plaintiff had severe impairments, including morbid obesity, Bipolar Disorder with psychotic features, Post-Traumatic Stress Disorder, and panic disorder without agoraphobia. (AR 6.)

But the ALJ decided, at step three, that the Plaintiff's impairments did not meet or equal the listed impairments either singularly or in combination. (AR 7.) Specifically, the ALJ determined that Plaintiff had not demonstrated her mental impairments met the criteria for Listing 12.04 (Affective Disorders including Bipolar) or 12.06 (Anxiety Related Disorders). (AR 7.) The ALJ concluded that Plaintiff exhibited no marked restrictions in function and no periods of decomposition, both of which are necessary for a disability determination under paragraph B of the Listings for mental impairments. (AR 7-8.)

At step four, the ALJ stated that given the limiting effects of her ailments, Plaintiff's RFC included light work; standing, walking, or sitting for 6 hours a day with normal breaks; occasional crawling and climbing; and frequent balancing, stooping, kneeling, and crouching. (AR 9-10.) The RFC eliminated exposure to areas without proper ventilation, hazardous machinery, and unprotected heights. *Id.* Furthermore, the ALJ found that Plaintiff could follow simple instructions in the workplace and work on a sustained basis. (AR 10.) Finally, the ALJ determined that Plaintiff would require limited social interaction with the public, supervisors, co-workers, and peers. *Id.* Based on this assessment, the ALJ concluded that Plaintiff could not perform past relevant work. (AR 15.)

However, at step five, given Plaintiff's RFC, age, education, and work experience, the ALJ found that Plaintiff was not disabled and could work as a courier messenger or janitor. (AR 17.)

## IV. STANDARD OF REVIEW

The Court has the "power to enter, upon the pleadings and the transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The factual findings of the Commissioner shall be conclusive so long as the findings are based upon substantial evidence and there is no legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Substantial evidence is "more than a mere scintilla[,] but not necessarily a preponderance," *Tommasetti*, 533 F.3d at 1038 (quoting *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir. 2003)). Further, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Where "the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). Moreover, the Commissioner, not the Court, is charged with the duty to weigh the evidence, resolve material conflicts in the evidence, and determine the case accordingly. *Matney*, 981 F.2d at 1019. However, the Commissioner's decision "cannot be affirmed simply by isolating a specific quantum of supporting evidence. . . . Rather, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." *Tackett*, 180 F.3d at 1098 (internal quotation marks and citation omitted).

### a. Plaintiff's Severity and Degree of Impairment

When determining a claimant's credibility, the ALJ first considers (a) whether there is an impairment that would reasonably be expected to cause the claimant's symptoms, and (b) the severity of claimant's ailments, including intensity, persistence, and limiting effects of alleged symptoms. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 96-7p (superseded by SSR 16-3p (Mar. 28, 2016)). For mental impairments, an ALJ must consider the degree of impairment in four areas of functioning (called paragraph B criteria): (1) activities of daily living; (2) social functioning; (3)

concentration, persistence and pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c), 416.920(c). The ALJ considers the paragraph B criteria at two intervals. First the ALJ evaluates the criteria to determine the degree of claimant's impairments (degrees include: none, mild, moderate, marked, and extreme). 20 C.F.R. § 404.1520a(d)(2). If the ALJ deems that the impairment is severe (generally above mild degree of impairment), 20 C.F.R. § 404.1520(a)(d)(1), the ALJ considers the criteria again to determine whether the alleged impairment meets the criteria for the listed mental impairment, 20 C.F.R. § 404.1520a(d)(2).

Paragraph B requires two or more of the of the following symptoms: "marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." (AR 7.) "A '[m]arked limitation' means that functioning in these areas independently, appropriately, effectively, and on a sustained basis, is 'seriously limited.'" *Lamonda v. Berryhill*, No. 3:16-cv-00587-HDM-WGC, 2017 WL 8222654, at *13 (D. Nev. Dec. 22, 2017) (citing 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(F)(2)(d)). Decompensation is repeated and extended when it occurs at least three times a year and lasts at least two weeks. *Mixon v. Comm'r of Soc. Sec. Admin.*, CV-16-02712-PHX-DLR, 2017 WL 4296665, at *3 (D. Ariz. Sept. 28, 2017) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.00).

The ALJ considered the listings for both Bipolar and anxiety disorders. (AR 7.) To determine the severity of the alleged mental impairments, the ALJ first examined Plaintiff's alleged limitations. (AR 9.) The ALJ found that Plaintiff's impairments could cause severe limitations, but the evidence did not support Plaintiff's claims about the "intensity, persistence, and limiting effects." (AR 11, 15.) The ALJ then examined the degree and severity of Plaintiff's alleged symptoms, including her mental impairments.

### b. *Activities of Daily Living*

First, the ALJ found that Plaintiff only had mild restrictions in her activities of daily living. (AR 7.) In support, the ALJ stated that Plaintiff disclosed she was capable of preparing meals, feeding a cat, driving, and shopping. (AR 7.) The ALJ noted that state

agency consultants also found only moderate limitations in these activities. (AR 7, 75, 92, 114, 135.) The ALJ stated "the claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations, which weakens her credibility." (AR 11.)

### c. Social Functioning

The ALJ also stated Plaintiff had moderate restrictions in social functioning, despite her claims to the contrary. (AR 7.) The ALJ noted that Plaintiff "spends time with others and lives with her daughter . . . was polite and cooperative and that her mood, affect, and behavior were normal." (AR 8.) The ALJ also mentioned Plaintiff's trip to Canada to support Plaintiff's social functioning. (AR 10.) The ALJ stated that these inconsistencies decreased Plaintiff's credibility. (AR 11.) Again, the ALJ gave significant weight to the opinions of state agency consultants, who also found moderate limitations in this area. (AR 8.)

In addition, the ALJ gave some weight to Plaintiff's Global Assessment of Functioning ("GAF") scores, which showed only "moderate symptoms or impairment in social or occupational functioning to some impairment in reality testing or communication." (AR 14.) However, the ALJ conceded that Plaintiff's GAF scores also showed "a major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." (AR 14.) But, the ALJ dismissed this portion of the GAF's findings, claiming that the GAF was merely "a snapshot of what the claimant's level of functioning is at that particular time, and not an indication of overall functioning." (AR 15.) Furthermore, "treatment notes indicted that the claimant was polite and cooperative and that her mood, affect, and behavior were normal." (AR 15.) In addition, the ALJ noted that this score was not determinative of disability, but was simply a snapshot of functioning at a certain time, and did not necessarily provide a conclusion for overall functioning. (AR 15.)

### d. Concentration, Persistence, and Pace

The ALJ determined that Plaintiff encountered only moderate difficulties with concentration, persistence, and pace. (AR 8.) The ALJ noted that the medical record

consistently showed Plaintiff was aware and "oriented to person, time, space, and situation" despite Plaintiff's assertion that her mental impairments caused comprehension and concentration issues, and an inability to cope with stressors. (AR 8, 11.) For the most part, the ALJ stated, Plaintiff exhibited fair to good "concentration, insight, and judgment," although a few medical records rated these factors as poor. (AR 8, 11.)

In addition, the ALJ cited to several places in the record that demonstrated that Plaintiff was thinking logically, was coherent and was goal-oriented. (AR 8, 11.) Furthermore, the ALJ pointed to medical notes indicating Plaintiff was not currently experiencing psychotic thoughts or delusions, or having suicidal or homicidal ideations. (AR 8, 11.) Finally, the ALJ again pointed out that state agency consultants supported the ALJ's finding of only moderate limitations in this area. (AR 8.)

### e. *Decompensation*

Even though state agents found at least two periods of decompensation (AR 13), the ALJ decided that Plaintiff had no periods of decompensation (AR 7-8). The ALJ stated, "there is little in the record or claimant's testimony that would indicate the claimant has suffered from . . . decompensation." (AR 8.)

### f. *Paragraph C Criteria*

The ALJ also considered the severity of paragraph C symptoms and found Plaintiff had not met paragraph C requirements. (AR 8.) Paragraph C of Listing 12.04 is met when there is a disorder causing at minimum two-years limitation in basic work activities, "with symptoms or signs currently attenuated by medication or psychosocial support." 20 C.F.R. Part 404, Subpart P, App. 1, Listings 12.04. In addition, a claimant must have either: (1) repeated, extended episodes of decompensation; (2) an inability to tolerate increased mental demands or changes in environment without causing decompensation; or (3) at least one year unable to function "outside a highly supportive living arrangement with indication[s]" that claimant require this level of support in the future. *Id.*

The ALJ found there was no evidence of prolonged periods of decompensation, nor an indication that decompensation would be triggered if Plaintiff were exposed to

environmental changes or an increase in the mental demands upon her. (AR 8-9.) Also, the ALJ claimed Plaintiff was capable of functioning independently outside the home because she was able to drive and shop. (AR 8-9.)

## V. CREDIBILITY DETERMINATION

After considering the degree and severity of alleged symptoms, if the claims of intensity, persistence and limiting effects are not supported by the evidence, the ALJ needs to determine, based on the record, whether plaintiff's claims are credible. 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p. When there is no evidence suggesting that a claimant is malingering, an ALJ's determination that a claimant is not credible must be supported by clear and convincing reasons. *Tommasetti*, 533 F.3d at 1039cace. In this determination, the ALJ must evaluate: (1) the daily activities of the individual; (2) "the location, duration, frequency, and intensity of the individual's . . . symptoms;" (3) what aggravates symptoms; (4) the medications used . . . ; and (5) other treatment, techniques, and relevant factors claimant employs to relieve symptoms. SSR 96-7p.

"The mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (citing *Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989) (home activities do not necessarily transfer to the workplace)); *see Reddick v. Chater,* 157 F.3d 715, 724 (9th Cir. 1998) (housework, trips, and exercise do not preclude disability); *see also Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (claimant may assist with household chores and still be disabled).

Moreover, "[t]he ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Hill v. Astrue*, 698 F.3d 1153, 1155 (9th Cir. 2012). With mental illness, "[c]ycles of improvement and debilitating symptoms are a common occurrence . . . , and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d

995, 1017 (9th Cir. 2014). "[F]ailure to consider . . . evidence supporting the existence of a severe impairment, calls into question a credibility determination premised on inconsistencies with the objective medical evidence." *Caceres v. Colvin*, 3:14-CV-05908-DWC, 2015 WL 4040727, at *5 (W.D. Wash. July 1, 2015).

However, if an ALJ shows that a claimant "'is able to spend a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" *Vertigan*, 260 F.3d at 1049 (citing *Morgan v. Comm'r Soc. Sec.,* 169 F.3d 595, 600 (9th Cir. 1998)) (emphasis in original).

## VI. DISCUSSION

Plaintiff argues that the ALJ ignored abnormal findings in the record, and instead cherry-picked moments of functioning to support his finding that Plaintiff was not disabled. (Doc. 17 at 16.) Plaintiff claims that even though the medical records showed moments in which Plaintiff was functioning adequately, these instances did not in any way diminish the medical exams that contained abnormal findings because the nature of bipolar disorder is cyclical. (Doc. 17 at 16.) Moreover, Plaintiff asserts that the ALJ did not establish that Plaintiff could engage in sustained work. (Doc. 17 at 18.)

The Court agrees with Plaintiff, the ALJ failed to consider the vacillations that occur with Bipolar and anxiety disorders when determining credibility. Instead, the ALJ focused on findings that supported his conclusion, to the exclusion of substantial evidence to the contrary. Furthermore, the ALJ ignored and mischaracterized significant portions of the record. Finally, even if the Court found that the ALJ appropriately considered the limitations of Plaintiff's impairments, the ALJ failed to demonstrate that Plaintiff would be able to engage in sustained work. Because of these failures, the ALJ's RFC did not accurately address Plaintiff's impairments.

In general, the ALJ found Plaintiff was not credible because the medical record showed that Plaintiff (1) was capable of performing a handful of activities; (2) was aware of person, space, time, and situation; and (3) was polite. However, because of the nature of Bipolar and anxiety disorders, the ALJ's assertions do not: (1) undermine Plaintiff's

claims of subjective symptoms during manic or depressive episodes; (2) recognize the instances in which Plaintiff was unable to perform daily activities, was disoriented, and was irascible; or (3) demonstrate that Plaintiff could engage in sustained work. The ALJ cherry-picked supporting instances, but ignored alarming indicators that Plaintiff suffers from debilitating mood swings that have left her in the hospital, homeless, paralyzed with anxiety, and childless.

**Activities of Daily Living**

First, the ALJ pointed to daily activities that Plaintiff could perform (i.e. feeding her cat, preparing meals, driving, and shopping) as evidence she was only mildly limited in her activities of daily living and that her testimony was not credible. However, the ALJ ignored the extent of Plaintiff's participation in these activities, and failed to consider that some activities were likely a manifestation of Plaintiff's maladies.

*Feeding Cat*

In this instance, feeding an animal is not inconsistent with Plaintiff's Bipolar Disorder because the ALJ ignored additional statements that Plaintiff also needed assistance caring for her cat. (AR 328.) Furthermore, a once or twice daily routine does not establish an ability to engage in sustained work.

*Prepare Meals*

In addition, the ALJ ignored Plaintiff's explanation that while she could make simple foods such as cereal, when she was manic she would forget steps in meal preparation. (AR 1184.) This would result in food burning on the stovetop or a full bowl of cereal left in the cabinet. (AR 1184.) These statements do not contradict, but rather supplement Plaintiff's statements that she can prepare simple meals. The ALJ disregarded the supplemental information which provided context for Plaintiff's manic episodes and focused in on that which supported his determination.

*Driving*

Furthermore, the ALJ decided that Plaintiff's driving was an indicator she could perform daily activities, but did not consider that driving was a symptom of her mania. The ALJ failed to acknowledge evidence that Plaintiff did not typically want to drive

because of her hallucinations (AR 1184), and needed to be transported to appointments by transportation services (AR 1685), taxis (AR 1741), ambulances (AR 1037, 1197, 1275, 1299, 1404, 1761) and family members (AR 1184). Because driving is an indicator of Plaintiff's manic state, and the ALJ did not consider this as a limit due to her impairments, driving does not negatively impact the credibility of Plaintiff's claim that her anxiety and bipolar affect her ability to drive.

*Shopping and Travel*

Moreover, the ALJ mischaracterized Plaintiff's shopping habits and travel and also equated them to her ability to function daily, when both were a result of her manic periods. (AR 312.) This was supported by both Plaintiff's claims her boyfriend handles her finances because of her manic spending sprees (AR 1184) and Dr. Brenda Sparrold's assessment that Plaintiff could not handle benefits in her own interest because of her manic phases (AR 1076).

*Missed Appointments*

Finally, the ALJ disregarded records that showed Plaintiff was unable to consistently appear for appointments and counseling sessions, or was otherwise unreachable. (AR 1538, 1542, 1062, 1068, 1557, 1674, 1675, 1686, 1696-97, 1701-03, 1705.) Plaintiff claimed that she often missed appointments because she "hear[d] voices telling her not to go places." (AR 1182.) The ALJ did not consider whether Plaintiff's inability to consistently attend scheduled appointments was due to her impairment, and whether it would affect her ability to engage in sustained work.

**Social Functioning**

The ALJ claimed that Plaintiff was able to function socially because she was caring for her daughter. (AR 8, 10.) This misrepresents the facts. A month before the Administrative Hearing, Plaintiff's daughter had been taken away, as had all of her older children. (AR 56, AR 1072, 1561, 1568.) The ALJ breezes over this fact, and fails to acknowledge that Plaintiff had any difficulties prior to removal. Records indicate that as early as March 2015, Plaintiff's daughter was not in her primary care and was living with a grandparent. (AR 1687.) Not to mention, Plaintiff was kicked out of her apartment for

- 13 -

domestic violence (AR 1156), was homeless, was kicked out of a shelter because "there were allegations against [her]" (AR 1531), and was only able to provide shelter to her daughter through the support of COPE, who paid for housing and utilities. (AR 43.) The ALJ completely ignored any connection between Plaintiff's battles caring for her children and her mental afflictions, and failed to evaluate whether Plaintiff's ability to live independently was limited because of her impairments.

In addition, the ALJ stated that Plaintiff was able to spend time with others. However, the ALJ supported this statement with evidence that merely indicated Plaintiff was able to spend a few minutes at a time with her kids (AR 327, 331), and was living with a parent (AR 1184). The records do not support Plaintiff's ability to spend any significant time with people outside of immediate family, nor do they suggest Plaintiff has minimal social limitations.

The ALJ further stated that since Plaintiff was noted to be polite, she therefore had only minimal limitations in social functioning. However, the ALJ overlooked strong indicators to the contrary. For instance, the ALJ never mentions Plaintiff's domestic violence charges, which occurred during a manic phase and resulted in a physical altercation with her boyfriend. (AR 1156.) Also, Plaintiff reported that her boyfriend claimed she was verbally abusive, but she had no recollection of this. (AR 1227.) Furthermore, there is no mention that her transportation service refused to pick her up because she was disrespectful and made racist remarks to the driver. (AR 1685.) Moreover, there are several instances in the record showing Plaintiff was irritable and insolent towards medical staff. (AR 1086, 1091, 1099, 1140, 1142, 1144, 1148, 1150, 1156, 1373, 1561, 1694, 1668, 1691, 1694.)

Also, the ALJ's assertion that the record did not support Plaintiff's claim she had psychotic thoughts, hallucinations, or suicidal or homicidal ideations ignores those instances in which these thoughts were present. (*See e.g.*, AR 1086, 1101, 1140, 1150, 1156, 1227, 1240, 1488, 1603, 1641, 1744.) The ALJ discounted Plaintiff's testimony, instead focusing on medical records indicating she was cognizant of her surroundings with no current hallucinations. However, this does not undermine Plaintiff's contention

that she experienced hallucinations, but only demonstrates that by the time she was treated, the hallucinations had subsided. This is consistent with Plaintiff's testimony that her medications took approximately 20 minutes to take effect. In fact, the ALJ only recognized that the medical records were merely a snapshot when the records supported Plaintiff's alleged impairments, and ignored that same notion when the records supported the ALJ's contention that Plaintiff was not impaired.

Furthermore, the opinion makes no mention of the hospitalizations that occurred while Plaintiff was in a depressive state. Specifically, she was hospitalized after hearing voices and exhibiting vague suicidal ideations. (AR 1603.) Plaintiff was also admitted to Palo Verde Hospital from August 1 to August 5, 2012 for mental health care (AR 1167), and then hospitalized at Crisis Response Center three months later for depression, suicidal ideations, and hallucinations. (AR 1086.) This exemplifies the cyclic nature of Plaintiff's Bipolar disorder, and the ALJ failed to explain how these periods of hospitalization still allow Plaintiff to participate in sustained work or explain why the ALJ does not consider these instances periods of decompensation.

There is also no mention of the consistent medical evidence and self-reports indicating that Plaintiff suffers from panic attacks, which at one point caused Plaintiff to stay in a Safeway bathroom for 45 minutes. (*See e.g.*, AR 1070, 1140, 1142.) Further, the ALJ uses the whirlwind trip to Canada not as a signal of Plaintiff's manic imbalance, but of her ability to participate in activities of daily living. This fails to account for the nature of the Bipolar Disorder, which resulted in Plaintiff leaving the state without ensuring she had enough medication (AR 1705), not checking in with COPE (AR 1696-97, 1701-03, 1705-06), and becoming engaged to a man after knowing him only a short time (AR 44).

The ALJ also failed to examine how Plaintiff's medications affected her mood and ability to engage in sustained work. There are several indications in the record that suggest part of Plaintiff's symptoms may be a result of an addiction to her medications. (*See e.g.*, AR 1197-1205 (admitted for dehydration but suggests possible opiate withdrawal); AR 1299 (admitted for overdose on friend's morphine pills); AR 1243 (pressuring staff to prescribe another benzo or increase Klonopin); AR 1521 (discusses

struggles with opiates); AR 1552 (says out of medication, then says has more, the reverts to being out for four days); AR 1561 (asks to switch providers because will not prescribe medications she desires); AR 1668 (angry cannot obtain certain medication today, and states if she ends up in the hospital it will be COPE's fault); AR 1674 (claims her medications were stolen and needs refills immediately); AR 1691 (upset at COPE when suggest limiting Clonazepam, threatens to start using marijuana instead).)

In sum, the ALJ committed legal error when he failed to consider Plaintiff's actions during her manic and depressive phases, and instead focused on indications that Plaintiff was cognizant, polite, and had ability to perform daily tasks. The ALJ mischaracterized evidence to support his assertions, and erroneously used Plaintiff's statements to discredit her, but these statements were not inconsistent with the record or her alleged symptoms. The ALJ also failed to establish that Plaintiff's limited abilities permitted her to engage in sustained work.

Furthermore, because the ALJ ignored substantial portions of the record that indicated impairment due to Bipolar and anxiety disorder, the ALJ could not have accurately assessed Plaintiff's RFC. Specifically, the ALJ disregarded records that demonstrated limitations in activities of daily living, social functioning, independent living, and decompensation. This disregard constituted legal error.

**Error Not Harmless, Remand for Further Proceedings**

If the district court determines that the ALJ committed legal error, it must then consider whether the error was harmless. *Treichler v. Comm'r Soc. Sec.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Harmless error occurs "when it is clear from the record the ALJ's error was inconsequential to the ultimate nondisability determination." *Garcia v. Comm'r Soc. Sec.*, 768 F.3d 925, 932 (9th Cir. 2014) (citation and internal quotation marks omitted). To determine whether a court should remand for benefits or for further proceedings, the court engages in a three-step inquiry. First the court must decide whether "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if improperly

discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Remand for further proceedings is appropriate when "there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Treichler*, 775 F.3d at 1101.

The Court finds that resolving the ambiguities in this case may clarify whether Plaintiff is disabled. The ALJ did not consider a substantial portion the record in relation to Plaintiff's Bipolar and anxiety disorders. An appropriate evaluation of the limitations could result in the ALJ determining Plaintiff is disabled. However, whether the frequency and intensity of symptoms establish that Plaintiff would be able to engage in sustained work is not clear based on the record before this Court. This is an issue that can be resolved for further proceedings in front of the Commissioner. Therefore, remanding this case for further consideration is appropriate.

Accordingly, IT IS ORDERED:

1. The decision of the Commissioner denying Plaintiff's claim for benefits is REVERSED.
2. The case is remanded for consideration in accordance with this Order.

Dated this 20th day of December, 2018.

_____
Bernardo P. Velasco
United States Magistrate Judge